UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **JENNIE V. WRIGHT, ET AL.,** | **PLAINTIFFS** |
| v. | No. 3:21-CV-308-BJB |
| **LOUISVILLE METRO GOVERNMENT, ET AL.** | **DEFENDANTS** |

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

On the morning of May 7, 2020, the Louisville Metro Police Department allegedly ordered Jennie and Saul Wright, along with their two children, out of their home in their pajamas and underwear. Complaint (DN 1-1) ¶¶ 8–13. The police took the couple into custody and held the children at gunpoint while officers searched them and their home. ¶¶ 11–16. The Wrights allege that the police searched the wrong house: officers asked for the residents of 1736 Columbia Street, but the Wrights' address was 1732. ¶¶ 1, 9–11, 18, 24–25. The Complaint also alleges that the officers lacked probable cause, made false representations, and carried out the search in an unreasonable manner. ¶¶ 19–20, 26–30, 33–35. So the Wrights sued the Louisville Metro Government and several unknown officers for violations of their civil rights under federal civil-rights law—42 U.S.C. § 1983—and several state laws. The city moved to dismiss on the ground that the Wrights failed to state a claim for municipal liability under § 1983, as interpreted by the Supreme Court in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). The Court agrees and grants the city's motion to dismiss (DN 5) the municipal-liability claims against the Louisville Metro Government.

### Municipal Liability

A municipality can be liable for its own unconstitutional actions, but it is not automatically liable for unconstitutional actions of its employees or agents. *Monell*, 436 U.S. at 694. The municipality must have adopted or ratified a policy or custom that caused the harm inflicted by its employees. *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011). To establish liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [their] particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). Mere conclusory allegations are not enough. The pleadings must set forth the specific policy or custom allegedly adopted by the government. *Monell*, 436 U.S. at 690–92. A plaintiff can do so by pointing to:

> (1) the municipality's legislative enactments or official agency policies;
>
> (2) actions taken by officials with final decision-making authority;
>
> (3) a policy of inadequate training or supervision; or
>
> (4) a custom of tolerance or acquiescence of federal rights violations.

*Jones v. Clark County*, 959 F.3d 748, 761 (6th Cir. 2020) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). "Where the identified policy is itself facially lawful, the plaintiff 'must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

### A. Complaint

The Wrights allege that several police officers forced them out of their house without a proper warrant. Complaint ¶¶ 9, 11–16. Most of the factual allegations focus on the officers' actions in this particular case, not a pattern of similar conduct in others. The sum total of the Wrights' allegations against the city are found at paragraphs 38–41:

> 38. Louisville Metro Government and Police Department's policy, or custom regarding obtaining and executing a Search Warrant deprived the Plaintiff's Fourth Amendment Right to be protected of [*sic*] unreasonable search and seizure.
>
> 39. Based upon information and belief, the Metro Police Department failed to adequately train their officers regarding the process to obtain a Search Warrant and its subsequent execution, which is a violation the Plaintiff's Fourth Amendment Rights.
>
> 40. Based upon information and belief, Metro failed to train its officers regarding executing Search Warrant to protect the citizens of Louisville['s] Fourth Amendment Rights.
>
> 41. Louisville Metro Police Department's policy and customs results [*sic*] in issuance of Search Warrants predominantly in African Americans' neighborhoods without the appropriate probable cause in an unreasonable manner, in clear violation of the Plaintiffs' Fourth Amendment Rights.

The Wrights argue they have pled sufficient facts that the city failed to adequately train its officers in obtaining and executing search warrants and that the city has a policy or custom that results in legally inadequate warrants being executed in African American neighborhoods. Response (DN 6) at 3–5. Moreover, the Wrights

assert that the facts of their own case allow for the inference that such a policy, custom, or training exists within the police department. *Id.* at 5.

But these statements amount to mere legal conclusions, not factual allegations. The Wrights never say, for example, why the warrant was issued without probable cause or what "materially false statements and omissions" appeared in the underlying affidavit. *Id.* at 2. In order to survive a motion to dismiss for failure to adequately state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept the allegations as true and "view the complaint in the light most favorable to the plaintiff," a court "need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). As discussed below, the Wrights' bare-bones assertions of liability offer no basis on which the Court could infer that Louisville Metro's training or policies violated the Constitution.

### B. Inadequate Training

A fail-to-train claim requires a plaintiff to "establish that: (1) the City's training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the City's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)).

**1.** To show the first element of a failure-to-train claim, allegations must focus on the "adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). This Court decided a similar case in *Sistrunk v. City of Hillview,* in which the plaintiff alleged that officers forced her out of her home and conducted a search without a warrant. No. 3:20-cv-406, 2021 WL 1601093, at *1–2 (W.D. Ky. Apr. 23, 2021). The plaintiff sued the city, alleging that the city "fail[ed] to adequately train its officers regarding obtaining search warrants" and "regarding executing search and/or arrest warrants." *Id.* at *1 (quoting complaint). These allegations were "conclusory allegations or legal conclusions." *Id.* at *3 (quoting *Verble v. Morgan Stanley Smith Barney*, 676 F. App'x 421, 424 (6th Cir. 2017)); *see also Sweat v. Butler*, 90 F. Supp. 3d 773, 778, 780–81 (W.D. Tenn. 2015) (similar).

The Wrights' allegations are almost identical, and fail for the same reason. They allege that the city "failed to adequately train their officers regarding the process to obtain a Search Warrant and its subsequent execution" and "regarding executing [a] Search Warrant." Complaint ¶¶ 39–40. Moreover, the Wrights do not allege anything at all regarding the training the officers are or are not given and how it might be

3

inadequate for the particular purpose of obtaining and carrying out search warrants. Tacking on the *ipsie dixit* of "upon information and belief," *id.*, does not render the allegations any less conclusory, *see Sampson v. Cleveland*, No. 1:20-cv-741, 2020 WL 7238427, at *3 (N.D. Ohio Dec. 9, 2020) (adding "upon information and belief" is insufficient absent adequate factual support); *Fleming v. New York*, No. 18-cv-4866, 2019 WL 4392522, at *8 (S.D.N.Y. Aug. 27, 2019) (same).

**2.** The Wrights also fail to adequately plead deliberate indifference, the second element of a failure-to-train claim. Deliberate indifference imposes "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Brown*, 520 U.S. at 410. In other words, a pleading must indicate a "risk of a constitutional violation arising as a result of" the inadequate training that is "plainly obvious." *Gregory*, 444 F.3d at 752. A plaintiff could potentially make this showing in two ways.

*First*, a plaintiff can show "prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it." *Jackson*, 925 F.3d at 836 (quotation omitted). "A pattern of similar constitutional violations by untrained employees," the Supreme Court has held, "is 'ordinarily necessary' to demonstrate deliberate indifference" for purposes of failure to train. *Connick*, 563 U.S. at 62 (quotation omitted); *see also Spainhoward v. White County*, 421 F. Supp. 3d 524, 544–46 (M.D. Tenn. 2019) (collecting decisions holding a single instance insufficient).

*Second*, the Supreme Court has not foreclosed, and the Sixth Circuit has accepted, the possibility that a plaintiff could provide "evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Jackson*, 925 F.3d at 836 (quotation omitted); *see Brown*, 520 U.S. at 409 ("In *Canton*, we did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability."). The Supreme Court has observed that a plaintiff might show this in a "narrow range of circumstances," *Connick*, 563 U.S. at 63, involving a "complete failure to train the [officers], training that is so reckless or grossly negligent that future … misconduct is almost inevitable or would properly be characterized as substantially certain to result.'" *Karsner v. Hardin County*, No. 3:20-cv-125, 2021 WL 886233, at *15 (quoting *Harvey v. Campbell County,* 453 F. App'x 557, 567 (6th Cir. 2011)).

In *Sistrunk*, the conclusory allegation that "Metro is deliberately indifferent" to the consequences of its policy did not suffice for either showing. 2021 WL 1601093 at *3–4; s*ee also Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012); *Connick*, 563 U.S. at 61–68. The Wrights do not even allege that the city was deliberately indifferent. Complaint ¶¶ 37–42. In fact, they say nothing of the city's knowledge or intent, focusing only on that of the officers. Their Complaint fails to allege this necessary element of their claim.

4

**3.** So too with the third element: causation or "relatedness." The government's shortcomings must be "closely related to or actually [have] caused the [plaintiff's] injury." *Jackson*, 925 F.3d at 834. In *Sistrunk*, the "bare assertion that Louisville Metro's policy or custom 'deprived' Sistrunk of her Fourth Amendment rights" was insufficient. 2021 WL 1601093 at *4. The Wrights offer no allegations about how the alleged training failures led to their particular injuries. Instead, the allegations are entirely conclusory: the failure to train "is a violation of the Plaintiff's Fourth Amendment Right," Complaint ¶ 39, and the "officer's conduct violated the Plaintiff's Fourth Amendment Rights," ¶ 42. *See Anthony v. Roberson*, 26 F. App'x 419, 422 (6th Cir. 2001) ("conclusory allegations are insufficient to state an arguable claim that an unconstitutional governmental policy caused Anthony's illegal arrest"); *Brown v. Cuyahoga County*, 517 F. App'x 431, 436 (6th Cir. 2013) (affirming dismissal of *Monell* claim based on "nothing more than a bare recitation of legal standards").

When stripped of the legal conclusions, the Complaint contains no factual allegations indicating what the training policies were, why they were inadequate, how the city was deliberately indifferent, or how the failures related to the Wrights' injuries. The Complaint's spare and conclusory allegations are therefore insufficient to state a claim. *See Iqbal*, 556 U.S. at 678.

### C. Policy or Custom

The Wrights also allege that the city has a "polic[y] or custom regarding obtaining and executing a Search Warrant" and that the city's "policy and customs resul[t] in issuance of Search Warrants predominately in African Americans' neighborhoods without the appropriate probable cause in an unreasonable manner." Complaint ¶¶ 38, 41. Much like the Wrights' failure-to-train claims, their policy-or-custom allegations amount to a series of inadequate legal conclusions.

To plead a policy, a plaintiff must "show that there were 'formal rules or understandings—*often but not always committed to writing*—that [are] intended to, and [do], establish fixed plans of actions to be followed under similar circumstances consistently and over time." *Jackson*, 925 F.3d at 829 (emphasis in original) (quotation omitted). In *Sistrunk*, for example, this Court applied those precedents to hold that the plaintiff failed to plead sufficient factual allegations of a formal or fixed policy. 2021 WL 1601093 at *5. There were no facts to support the existence of such a policy nor any allegations about how the policy amounted to deliberate indifference or caused the injuries at issue. *Id*.

The Wrights provide even less. All they allege is a policy and custom of obtaining and executing search warrants that "results in issuance of Search Warrants predominately in African Americans' neighborhoods without the appropriate probable cause in an unreasonable manner." Complaint ¶ 41. Just like *Sistrunk*, a conclusory allegation that a warrant-without-probable-cause policy exists is not enough. And unlike *Sistrunk*, the Wrights do not even provide specifics about how searches pursuant to the policy are carried out. No factual allegations suggest the existence of such a

policy, of deliberate indifference to its consequences, or any causal relationship to the injuries alleged here. A plaintiff's "conclusory allegations that the defendants had an unlawful policy, unaccompanied by supporting factual allegations, 'are not entitled to the assumption of truth,' and do not state a plausible claim for relief." *Taylor v. Brandon*, No. 3:14-cv-588, 2016 WL 258644, at *3 (W.D. Ky. Jan. 20, 2016) (dismissing official-policy claims) (quoting *Iqbal*, 556 U.S. at 679); *see also Klotz v. Shular*, No. 3:14-cv-723, 2015 WL 4556267, at *7 (W.D. Ky. July 28, 2015) (dismissing *Monell* claims that failed to plead facts supporting illegal-policy claim).

Similarly, a "custom" claim requires a plaintiff to "show that [the municipality] has (1) an unwritten custom (2) of remaining deliberately indifferent (3) to a clear and persistent pattern of illegal uses of force and seizures (4) that it knew or should have known about." *Spainhoward*, 421 F. Supp. 3d at 543 (quotation omitted); *see also Thomas*, 398 F.3d at 429. "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004)). And a "custom" exists only if the pattern is "so permanent and well settled as to constitute a custom or usage with the force of law." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010); *Brown*, 520 U.S. at 404 ("an act performed pursuant to a 'custom'" may trigger municipal liability if the practice "is so widespread as to have the force of law").

The "pattern" requirement implies repetition of similar events. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("a custom … claim requires a showing that there was a pattern of … similar claims"). "Two incidents of unconstitutional searches over the course of five months," the Sixth Circuit has held, "d[o] not demonstrate behavior 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Beard v. Whitmore Lake Sch. Dist.*, 244 F. App'x 607, 613 n.3 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 691).

The Wrights point to no other incidents to support their custom claims. And as noted before, they fail to allege that the city was deliberately indifferent to any such custom or incidents. The Wrights' allegations offer no similar incidents from which any sort of pattern or custom could be inferred. Generally referencing violations to similar people is insufficient. *See, e.g.*, *Jones*, 959 F.3d at 762; *Taylor*, 2016 WL 258644 at *3.

Just like in *Sistrunk*, the Wrights rely on *New v. Louisville Metro Government* No. 3:15-cv-653, 2016 WL 1268299 (W.D. Ky. Mar. 31, 2016). *Sistrunk*, 2021 WL 1601093 at *6; Response at 4–5. In *New* the Court denied a motion to dismiss because the plaintiff alleged that a custom existed for car chases that was unconstitutional and violated the department's written policy. 2016 WL 1268299 at *2–3. That decision relied on the fact that an internal investigation found no violation despite the existence of a contrary written policy. *Id.* at *3. And the allegations were more specific than those here: they included allegations of deliberate indifference and contrasted "customs and practices of Defendants" with "expressly violated written policies of the LMPD" that

formed "the 'moving force' behind his injury." *Id*. The Wrights provide significantly fewer allegations and facts. *See Nichols v. Wayne County*, 822 F. App'x 445, 452–53 (6th Cir. 2020) (allegations regarding lengthy forfeiture proceedings insufficient to plead custom, policy, or failure to train).

The Wrights also seem to argue that the facts of their own case allow the Court to infer that the city maintains a policy, custom, or lack of training that its officers deliberately ignore. Response at 5. The Sixth Circuit has repeatedly rejected just this argument. "The danger" in this type of reasoning, the Sixth Circuit concluded, was that "infer[ing] a municipal-wide policy based solely on one instance of potential misconduct … would result in the collapsing of the municipal liability standard into a simple respondeat superior standard." *Thomas*, 398 F.3d at 432–33; *see also Doe v. Claiborne County*, 103 F.3d 495, 508–09 (6th Cir. 1996) (even if the schoolboard was reckless in failing to investigate the allegation in the plaintiff's case, that alone did not adequately allege a custom).

And even so, plaintiffs must show that the flaws in their particular case represented "a clear and persistent pattern of illegal activity" which the defendant was deliberately indifferent to and which caused the injury at issue. *Thomas*, 398 F.3d at 433. Again, the Wrights have not alleged such a pattern or deliberate indifference, and the alleged flaws in this particular case—an apparently mistaken address, Complaint ¶¶ 1, 9–11, 18, 24–25—create no inference that one exists. Even "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Canton*, 489 U.S. at 391. This is especially true when the mistake concerns a frequent practice, like obtaining and executing a warrant, that will inevitably involve errors. *See Connick*, 563 U.S. at 73 (Scalia, J. concurring) (routine errors facing prosecutors like authorizing a bad warrant cannot alone amount to *Monell* liability). Treating ordinary mistakes as sufficient would substantially diminish the *Monell* standard. *Id*.

Suing a municipality based on the violations of its agents requires that a plaintiff point to *facts*, that if true, would show that a city had a policy, custom, or failure to train their employees in a way that was deliberately indifferent to constitutional violations, resulting in plaintiff's injury. This is not an easy showing. Nor is it meant to be; Congress has not imposed and the Supreme Court has not condoned respondeat superior liability for the day-to-day actions of municipal employees. *Thomas*, 398 F.3d at 432–33. Specific factual allegations are necessary. And the Wrights' conclusory legal allegations are devoid of such facts. They do not adequately allege any policy, custom, or training failure, and never even mention deliberate indifference. Nor do they connect these alleged policies to their injuries. So the Court must dismiss. *Phillips v. PTS of Am., LLC*, No. 3:17-cv-603, 2017 WL 4582801, at *2 (W.D. Ky. Oct. 13, 2017).

## **<u>ORDER</u>**

The Court grants Louisville Metro's motion to dismiss (DN 5) the *Monell* claims.

cc: counsel of record